396 So.2d 1360 (1981)
Joseph D. REED, Plaintiff-Appellee,
v.
Frank W. LEWING, Defendant-Appellant.
No. 14469.
Court of Appeal of Louisiana, Second Circuit.
March 23, 1981.
*1362 Touchstone & Wilson by David M. Touchstone, Shreveport, for defendant-appellant.
Lunn, Irion, Switzer, Johnson & Salley by Frank M. Walker, Jr., Shreveport, for plaintiff-appellee.
Before MARVIN, JASPER E. JONES and FRED W. JONES, Jr., JJ.
MARVIN, Judge.
The appeal in this workers' compensation case concerns the legal relationship and resulting liability under the law between a homeowner (Mrs. Lehr), who was constructing a residence, her perhaps agent, contractor, or overseer (Lewing), who was a housebuilder and, for his services, was paid a percentage of the cost of labor and materials used in the construction, and the claimant-carpenter (Reed), an employee of another carpenter (Hammons), who sustained a football-type injury to his knee when he strained it while working on the roof of the house.
Reed sued Lewing, who made Mrs. Lehr a third-party defendant in an incidental demand. This demand was dismissed by summary judgment on Mrs. Lehr's motion establishing that she was unemployed and was not engaged in the trade, business, or occupation of building homes, but was merely building for herself. LRS 23:1061.
The trial court rendered judgment for the claimant under the specific loss provision of the statute for 10 percent permanent partial loss of use of the left leg (LRS 23:1221(4)(h)(o), plus medical expenses of $2,520, subject to credit for any amounts paid during the time of his total disability before and after knee surgery. The record indicates that nothing was paid claimant under the workers' compensation law.
The trial court found that Mrs. Lehr and Lewing had joint control over the hiring and firing of workmen on the house and cast Lewing in judgment for only one-half of the amount because Reed had earlier settled and compromised his claims against Mrs. Lehr.
Lewing appealed, contending he was not Reed's employer. Reed answered the appeal, contending that Lewing should be cast for a greater amount of compensation without considering the one-half contribution factor, as well as for penalties and attorney fees because of Lewing's arbitrary and capricious refusal to pay benefits and medical expenses. The trial court's reasons for judgment and the judgment itself are silent with respect to claimant's demands for penalties and attorney's fees. Silence in this respect may be deemed to have been a rejection of this demand. See Creole Corp. v. McMillan, 379 So.2d 805 (La.App. 4th Cir. 1980) and Stringer v. Todd, 305 So.2d 696 (La.App. 4th Cir. 1974).
Lewing, unlike the son of the homeowner in Pratt v. Hartford Fire Ins. Co., 10 So.2d 252 (La.App. 2d Cir. 1942), is in the business of building homes, and in the front of Mrs. Lehr's house, he placed his sign, "Custom Built by Frank Lewing". Lewing's relationship with Mrs. Lehr began when he contracted with her to build the foundation for the home of approximately 7,000 sq. ft. at a fixed price for labor and materials. Thereafter, he agreed to help her complete the construction for a percentage of the cost of labor and materials. Mrs. Lehr did not have detailed plans and specifications for the home and was necessarily involved in the day-to-day details of and changes in the work. Lewing ordered or obtained the material for the job and selected most of the workers, discussed with them their respective wage scale, kept books, and determined their wages. Mrs. Lehr paid the workmen through Lewing, usually by giving him a sufficient amount of cash for that purpose.
Mrs. Lehr and Lewing went to Hammons, who had carpenters working on another residence in the area. The claimant Reed was one of Hammons' carpenters who came with Hammons to the Lehr job. Mrs. Lehr apparently discussed a pay scale with Hammons in the presence of Lewing, but Lewing *1363 himself discussed with Reed his pay scale and Lewing directed Reed's work on the job. Workmen who testified stated that they considered Lewing as "directing" the job. Mrs. Lehr approved the hiring of most of the workmen, and also directed them on the job, making changes in the construction as it progressed. On at least one occasion she discussed with Lewing the firing of a worker whose work proved unsatisfactory. Lewing did the actual firing.
Under these circumstances, the trial court was not wrong in concluding that Lewing exercised sufficient [joint] control to be deemed an employer under the workers' compensation law. § 1061. Although Lewing was not paid a fixed price and did not exercise exclusive control over the workmen, he was engaged in his business, he was paid by a fixed formula or percentage, he did exercise some control over the workmen, their hiring and firing, and even though with Mrs. Lehr's money, he determined and "paid" wages to the workmen. See Malone-Johnson, "Workmen's Compensation", 2d Ed., La. Civil Law Treatise, Vol. 13, § 52; Franklin v. Haughton Timber Co., 377 So.2d 400 (La.App. 2d Cir. 1979); Alexander v. J. E. Hixson & Sons Funeral Home, 44 So.2d 487 (La.App. 1st Cir. 1950).
Mrs. Lehr, unlike Lewing, was not building the house as a part of her trade, business, or occupation. § 1035, § 1061. Notwithstanding the trial court's finding of joint control by Lewing and Mrs. Lehr over the job, she is not liable to the claimant under the workers' compensation law since the building of the home was not a part of her trade, business or occupation. See § 1035; Malone-Johnson, supra, § 94; Fonseca v. Marlin Marine Corporation, fn.3 (La.1981). Whatever may have been her liability to the claimant, it is well and long settled that her liability is not under the workers' compensation law and is not a solidary liability with Lewing. Mrs. Lehr's settlement with the claimant does not inure to the benefit of or affect the workers' compensation liability of Lewing to the claimant. See §§ 1061, 1063, 1031, 1044; CC 2103; CCP 1111-1116. Her settlement with claimant did not have to conform to a lump sum settlement under the workers' compensation law to be otherwise effective.[1] The trial court did not err in granting summary judgment dismissing the third party demand against Mrs. Lehr.
Claimant suffered a "bucket handle" tear of the medial meniscus of the left knee in March 1978. When the injury occurred claimant was also employed (as he had been for the past 11 years) at Western Electric. Shortly after surgery, claimant was released to return to light duty at Western Electric on June 5, 1978. Claimant was released to resume full duty at Western Electric and all other activity on July 3, 1978, with a 10 percent permanent disability of his left leg. The maximum recovery in cases such as this, where the period of total disability does not provide as much compensation as the specific loss, is based on the specific loss provisions of § 1221(4)(h)(o). Minimum weekly compensation under the law computes to $38.95. § 1202. Claimant is entitled to compensation for 175 weeks for the partial loss of use of his lower left extremity at the statutory minimum of $38.95, plus medical expenses of $2,520.[2] The trial court's judgment was for $6,825, reduced by one-half because of the settlement by Mrs. Lehr of the claims of claimant. We amend the judgment to reflect the correct computation of the weekly amount due and to delete any reference to reduction of the amount.
In answer to the appeal, claimant also seeks attorney's fees and penalties based on defendant's arbitrary refusal to honor his *1364 claim for benefits. In Campbell v. Baker, Culpepper & Brunson, 382 So.2d 1046 (La. App. 2d Cir. 1980), we stated:
"The question of attorney fees and penalties is not a question of discretion or a question of the seriousness and good faith of the asserted defenses. Brewton v. L. L. Brewton Lumber Co., Inc., 349 So.2d 1364 (La.App. 2d Cir. 1977). LRS 23:1201.2 provides that the employer shall be subject to penalties and attorney fees when the failure to make payment is arbitrary, capricious or without probable cause. If the asserted defenses are without a sound basis in fact or in law, penalties and attorney fees shall be assessed. Brewton, supra at p. 1367."
Was Lewing arbitrary, capricious, without probable cause or a sound basis in fact or in law in contending that he was not an employer of claimant under the compensation law? §§ 1061, 1031, 1035, 1044. Lewing did not make Hammons a third party defendant or claim indemnity from Hammons. § 1063. Mrs. Lehr was not a subcontractor of Lewing in fact or in law. § 1063. Under the finding of joint control, Mrs. Lehr may have been an employer in the conventional sense, but she was not an employer "subject to this chapter" under § 1031 because the work she was undertaking was not a part of her trade, business, or occupation. § 1035, 1061. See Malone-Johnson, supra, § 94; Fonesca, supra. Lewing does not and did not contend that Mrs. Lehr was constructing her home as a part of her trade, business, or occupation, but instead he relied only on the contention that he was himself a mere agent or employee of, and was controlled by, Mrs. Lehr. Her control over him, however, does not remove him from his business of building houses or from exercising control over his employees, sub-contractors and their employees. A person who undertakes to execute any work which is a part of his business is liable for workers' compensation benefits to any employee of another who is employed in the execution of the work as "if the employee had been immediately employed by him." § 1061. See also Malone-Johnson, supra, § 59. Reed's work was a part of Lewing's business in any event. Lewing's defense is without a sound basis in fact and in law. Penalties (12 percent) and reasonable attorney fees under these circumstances shall be assessed. § 1201.2; Campbell, supra. Considering the one-day duration of the trial, the record, the briefs on appeal, and the amount awarded, we deem $1,500 to be a reasonable attorney's fee.
Accordingly, we amend and recast the judgment to read that
IT IS HEREBY ADJUDGED AND DECREED that there be judgment in favor of claimant Reed and against defendant Lewing
For $6,816.25 (being $38.95 weekly for the 175 week period from the date of the accident on March 1, 1978);
For $2,520 medical expenses;
For legal interest on the weekly amount due from the due date of each weekly amount past due, and on the medical expense, from the date of judicial demand;
For the additional amount of 12 percent on the total amount found due under the workers' compensation law;
For $1,500 reasonable attorney's fees, and
For all costs, including the cost of appeal.
As thus amended and recast, judgment is AFFIRMED.
NOTES
[1] In the settlement, Reed and Mrs. Lehr expressly agreed that there was no employment-workers' compensation relationship between them and that Mrs. Lehr had no liability under the workers' compensation law to Reed.
[2] Claimant was paid $4 per hour. His wages should be determined on the basis of 40 hours per week. §§ 1202, 1021(7). He was disabled, either wholly or partially, from March 1 to July 3, 1978. The total compensation due for disability (66 2/3 percent of $160, or $106.66 × 18 weeks) is less than the total compensation due for the scheduled loss (statutory minimum of $38.95 for 175 weeks, or $6,816.25). In such cases the employee is entitled to the greater amount. See Malone-Johnson, supra, §§ 282-285.